IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARVIN JOVAN JACKSON, | ) | |
| Petitioner, | ) | Civil Action No. 13-362 Erie |
| | ) | |
| v. | ) | District Judge J. Frederick Motz |
| | ) | Magistrate Judge Susan Paradise Baxter |
| TABB BICKELL, et al., | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Respondents' motion to dismiss [ECF No. 15] be granted and that the petition for a writ of habeas corpus be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

### II. REPORT[1]

#### A. Relevant Background

In September 2009, an Erie County jury found Petitioner, Marvin Javon Jackson, guilty of Possession With Intent to Deliver (Count 1), Simple Possession (Count 2), and Possession of Drug Paraphernalia (Count 3). Gene Placidi, Esquire, was his defense counsel.

The Superior Court of Pennsylvania summarized the facts of Petitioner's case as follows:

> On October 16, 2008, a long-time Confidential Informant ("CI") informed Detective Donald Dacus of the Erie Police Department of [Petitioner's] drug dealing activity. Police subsequently set up two controlled "drug buys" from [Petitioner] by CI. Via surveillance, police watched [Petitioner] travel from his residence to the drug buys, and back to his residence. After the second "buy," CI informed police that [Petitioner] had indicated that he was getting low on supply and was planning a trip to Detroit the next day in order to get an additional supply of drugs. Police watched [Petitioner's]

---

[1] Respondents have submitted copies of the relevant state court records. They are numbered 1 through 29 (the most recent order from the Court of Common Pleas designated with an "E") and shall be cited herein as "SCR No. ___."

1

residence the next day and observed that his vehicle was not at that location. That evening, CI informed Detective Dacus that he had spoken with [Petitioner] and that [Petitioner] indicated that he was returning from Detroit and had more drugs. Police then set up surveillance at [Petitioner's] residence.

At approximately 11:00 p.m., CI called Detective Dacus and informed him that [Petitioner] was 20 minutes away. [Petitioner's] vehicle arrived at his residence at 11:25 p.m. Police immediately approached [Petitioner's] vehicle, opened his door, and asked him to exit. Then Lieutenant Michael Nolan conducted a pat-down search of [Petitioner's] person. During the pat-down, the officer felt a large bulge in the rear of [Petitioner's] pants. The officer grabbed it, but did not remove it. [Petitioner] was handcuffed and taken to the police station, where 57.4 grams of cocaine were removed from [Petitioner's] pants. [Petitioner] was charged with possession with intent to deliver crack cocaine, possession of crack cocaine, and possession of drug paraphernalia.

On March 24, 2009, [Petitioner, through his counsel, Placidi], filed an omnibus pre-trial motion seeking to suppress all evidence seized from his person. The trial court held a hearing on April 28, 2009, and denied the motion to suppress on July 10, 2009. On September 16, 2009, at the conclusion of a jury trial, [Petitioner] was convicted of the crimes specified above. On October 23, 2009, the trial court sentenced [Petitioner] to a term of incarceration of six to twelve years on the conviction of possession with intent to deliver, and to a concurrent term of six to twelve months on the conviction of possession of drug paraphernalia.

(SCR No. 12, Commonwealth v. Jackson, No. 1956 WDA 2009, slip op. at 1-3 (Pa.Super. Mar. 22, 2011)).

Petitioner challenged his judgment of sentence on direct appeal to the Superior Court. All of his claims "challenge[d] the propriety of the trial court's denial of [Petitioner's] motion to suppress." (Id. at 4). Specifically, he raised the following four claims:

I. Whether or not the lower court erred in finding that Lieutenant Nolan and other officers of the City of Erie Police Department had reasonable suspicion based on articulable facts to justify the investigative detention of the [Petitioner] when Lieutenant Nolan and the City of Erie Police seized [Petitioner] in his vehicle on October 17, 2008 at approximately 11:45 P.M. after [Petitioner] parked his vehicle in front of his residence at 1619 Chestnut Street, Erie, Pennsylvania?

    a. Whether or not the lower court erred in finding the "reliability" of the confidential informant was sufficient to establish reasonable suspicion to warrant the investigative detention of the [Petitioner]?

2

      b. Whether or not the lower court erred in finding that the "basis of knowledge" of the confidential informant was sufficient to establish reasonable suspicion to warrant the investigative detention of the [Petitioner]?

    II.     Whether or not the trial court erred in finding that Lieutenant Nolan of the City of Erie Police Department had reasonable suspicion based on articulable facts that [Petitioner] was in possession of a weapon or otherwise armed and dangerous at the time Lieutenant Nolan performed a "pat down" of the [Petitioner] on October 17, 2008 after [Petitioner] was seized from his vehicle by Lieutenant Nolan and the City of Erie Police and after [Petitioner] parked his vehicle in front of his residence at 1619 Chestnut Street, Erie Pennsylvania?

    III.    Whether or not the trial court erred in finding that Lieutenant Nolan did not exceed the parameters of a legal "pat down" of [Petitioner] on October 17, 2008 after [Petitioner] was seized from his vehicle after [Petitioner] parked his vehicle in front of his residence at 1619 Chestnut Street, Erie, Pennsylvania despite the fact that Lieutenant Nolan testified that after feeling the bulge and knowing that the bulge was not a weapon, he nevertheless continued to manipulate the bulge by grabbing the bulge?

    IV.    Whether or not the trial court erred in finding that Lieutenant Nolan had probable cause to arrest [Petitioner] after Lieutenant Nolan performed a "pat down" of [Petitioner] and felt the bulge in the seat of [Petitioner's] pants and believing the bulge to be drug contraband, however, never removing the bulge prior to arresting [Petitioner]?

(Id. at 3-4, quoting Petitioner's Brief at 3-4).

The Superior Court denied each of Petitioner's claims on the merits in a Memorandum it issued on March 22, 2011. (Id. at 4-20). Petitioner did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On or around December 2, 2011, Petitioner filed a *pro se* motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (SCR No. 10). The PCRA court appointed him counsel, who subsequently filed a "no-merit" letter and motion to withdraw pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988), which establishes the procedure for withdrawal of court-appointed counsel in a collateral attack of a judgment of sentence. The PCRA court permitted counsel to withdraw denied Petitioner's PCRA motion. (SCR No. 27).

3

Petitioner filed a *pro se* appeal with the Superior Court. He raised the following three claims:

> I.    Was it error of the court not to allow [Petitioner] to face his accuser in his pretrial motion hearing or any other proceeding, or just ineffective [sic] of counsel to request this constitutional right to face his accuser, and then for counsel not to object to hearsay evidence?
>
> II.    Whether it was ineffectiveness of counsel to neglect and failure [sic] of his duties to motion the court to suppress a statement made by his client, violating [Petitioner's] constitutional rights of Miranda[?]
>
> III.    Did the trial court abuse its discretion in rejecting [Petitioner's] one voir dire question probative to disqualifying jurors with fixed bias, and counsel ineffective not to object on the record?

(SCR No. 11, Commonwealth v. Jackson, No. 516 WDA 2012, slip op. at 4 (Pa.Super. Mar. 12, 2013) (quoting Petitioner's Brief at 12, 20, and 26)).

On March 12, 2013, the Superior Court issued a Memorandum in which it rejected each of Petitioner's claims and affirmed the denial of PCRA relief. (Id. at 6-8). On October 17, 2013, the Supreme Court of Pennsylvania denied a petition for allowance of appeal.

In November 2013, Petitioner filed a second *pro se* PCRA motion, in which he raised the following issues:

> I.    Whether the court erred in allowing his court-appointed PCRA counsel to withdraw?
>
> II.    PCRA counsel was ineffective.
>
> III.    Whether Alleyne v. United States, — U.S. — , 133 S.Ct. 2151 (2013) "renders newly constitutional rights based on new sentencing."

[ECF No. 6 at 4].

In December 2013, the PCRA court dismissed Petitioner's second PCRA motion. See SCR No. "E." Petitioner did not file an appeal with the Superior Court. That same month, he commenced this case pursuant to the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the

4

Antiterrorism and Effective Death Penalty Act of 1996. Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010). Petitioner challenges his state judgment of sentence and seeks an order from this Court directing that he be immediately discharged from his sentence. In support of his request for habeas relief, Petitioner raises the following seven claims:

> I.     Whether the Court of Common Pleas, Erie County violated Article I § 8 of the Pennsylvania State Constitution and the Fourth, Fifth, Sixth and Fourteenth Amendments under the United States Constitution, by not having subject matter jurisdiction/personal jurisdiction to proceed in presiding over criminal prosecution of Petitioner?
>
> II.    Whether the Court of Common Pleas, Erie County unlawfully detained, illegally tried, convicted and sentenced Petitioner without having subject matter jurisdiction and personal jurisdiction?
>
> III.   Did the Court of Common Pleas, Erie County have subject matter jurisdiction and personal jurisdiction over Petitioner without a judicial finding of probable cause within a 48 hour time limit as required by Article I § 8 of the Pennsylvania Constitution and the United States Constitution under the Fourth, Fifth, Sixth and Fourteenth Amendments?
>
> IV.   Did the Court of Common Pleas, Erie County act in abuse of discretion when after knowing it lacked subject matter jurisdiction and personal jurisdiction to proceed in adjudication with criminal complaint against Petitioner, but continued in its adjudication of criminal complaint?
>
> V.    Was trial counsel ineffective for withdrawing pre-trial motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 513, which is similar to the Fourth Amendment of the United States Constitution?[2]

---

[2]    In the omnibus pre-trial motion, Attorney Placidi argued that the court should dismiss the charges against Petitioner because "[t]he alleged warrant filed by the Commonwealth does not contain an affidavit of probable cause as required by Pennsylvania Rule of Criminal Procedure 513." (SCR No. 5 at 5). At the suppression hearing, Attorney Placidi withdrew that portion of the motion, stating: "Regarding Rule 513, …. I think the case law does not substantiate our position, Your Honor. I believe there is probable cause shown at the preliminary hearing, and it's irrelevant as to whether or not there was an affidavit." (SCR No. 16 at 3).

5

VI.  Did the City of Erie Police Department violated the Fourteenth Amendment of the United States Constitution by not affording Petitioner the due process of law in failing to bring Petitioner in front of a magistrate, or issuing authority?

VII.  Did the Erie County Court of Common Pleas Judge Ernest J. DiSantis Jr. act in bad faith and abuse his discretion for failing to grant pre-trial motion to dismiss criminal complaint pursuant to Pennsylvania Rule of Criminal Procedure 513, which is similar to the Fourth Amendment of the United States Constitution?

[ECF No. 1 at 5-6, ECF No. 6-1 at 4-5].

Respondents have filed a motion to dismiss the petition because Petitioner did not exhaust his claims in state court. [ECF No. 15]. Petitioner did not file a reply. He did acknowledge in his petition, however, that "none of the grounds have been raised in state courts." He states that they were not raised due to "lack of knowledge of issues" and also argues that "subject matter jurisdiction can never be waived and can be raised for the first time in Federal Court." [ECF No. 6 at 12]. He also argues "that it would be a fundamental miscarriage of justice" if this Court "does not view [his] claims on [the] merits." [ECF No. 6 at 9].

### B.  Discussion

A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999).

> [It is] principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of

government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added). In Pennsylvania, this requirement means that a petitioner in a non-capital case *must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal*. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). He has not met that burden. The record in this case establishes that did not raise to the Superior Court claims any of the claims that he has presented to this Court.[3] Because he did not, each of his claims is procedurally defaulted. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). See also Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts (*i.e.*, is unexhausted) and there are not additional state remedies available to pursue[.]"). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim

---

[3] Petitioner raised claims of ineffective assistance of counsel in his PCRA appeal, but they are not the same claims of ineffective assistance of counsel that his is raising in this federal habeas case.

whenever the petitioner failed to raise it in compliance with a state's procedural rules.[4] Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986); Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012).[5] A lack of knowledge or an unawareness of procedural rules is not an "external" factor that excuses Petitioner's failure to raise his claims to the state court and, therefore, his argument that he "lacked knowledge" of his claims does not excuse his default. See Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (mere inadvertence does not constitute cause for a procedural default); Coleman, 501 U.S. at 752 (discussing ignorant or inadvertent procedural default).

Petitioner also argues that it would be a "miscarriage of justice" if the Court does not review his claim on the merits. A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the

---

[4] Petitioner's argument that he can raise a claim that the state court lacked jurisdiction for the first time in a federal habeas proceeding has no merit. There are no special rules for such claims in federal habeas proceedings. As explained above, a state prisoner must first properly raise a federal habeas claim to the state before the federal court may review it on the merits, and if he did not do so he defaulted it for the purposes of federal habeas review.

[5] To the extent that Petitioner blames his court-appointed PCRA counsel for failing to raise his claims, that argument too lacks merit. Counsel was permitted to withdraw as his PCRA attorney. Any failure to properly raise and brief his PCRA claims to the Superior Court is attributable solely to Petitioner, since he was proceeding *pro se*. In Martinez, the Supreme Court held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective [under the standards of Strickland]." 132 S.Ct. at 1320. The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21.

petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schulp, 513 U.S. at 316. There is no question that this is not the type of extraordinary case in which a petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

For the reasons set forth above, all of Petitioner's claims must be dismissed with prejudice because he failed to exhaust his state court remedies with respect to them.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable

whether each of Petitioner's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Respondents' motion to dismiss [ECF No. 15] be granted and that the petition for a writ of habeas corpus be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 14, 2014

cc:    The Honorable J. Frederick Motz
       United States District Judge